Barbara S. WILSON, Plaintiff-Appellee,

v.

Andrew Franklin WILSON, Defendant-Appellant.

No. 80–3845

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 12, 1982.

Jack N. Rogers, Baton Rouge, La., for defendant-appellant.

Dodd, Barker, Avant, Wall & Thomas, Daniel L. Avant, Baton Rouge, La., for plaintiff-appellee.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

PER CURIAM:

This case presents for decision the question whether a 1970 Texas divorce decree awarding appellee a portion of her husband's military retirement payments survives the recent Supreme Court decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). On the basis of this Court's opinion in *Erspan v. Badgett*, 647 F.2d 550 (5th Cir. 1981), *reh. en banc denied with opinion*, 659 F.2d 26 (5th Cir. 1981), we are obligated to affirm the trial court's decision that the prior judgment was res judicata as to Andrew Wilson.

*Facts*

Barbara Wilson brought this diversity suit in the United States District Court for the Middle District of Louisiana to enforce a 1970 decree of the 98th Judicial District Court of Travis County, Texas, which awarded her $226.25 per month from her husband's military retirement pay. Andrew Wilson, although represented by counsel at the prior hearing, never appealed that decision. His retirement payments became due in 1971, but Barbara never received any money.

Barbara urged that the federal court, sitting in diversity, has the same obligation as a Louisiana state court to give full faith and credit to the Texas state court decree. After a bench trial, the District Judge agreed and ordered Andrew to pay Barbara $24,435 in arrearages for the period from September 1971 to August 1980 and future payments of $226.25 per month beginning September 1980. Andrew appealed.

*Discussion*

Federal law, 28 U.S.C. § 1738,[1] requires that state judgments be given "the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken." *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (res judicata applies in 42 U.S.C. § 1983 actions); *Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1241 n.42 (5th Cir. 1981) (Georgia court injunction). Thus if Texas courts would enforce the decree, the District Court must do so as well.

Under the principles of res judicata, a final judgment on the merits in an action precludes the parties from relitigating issues that were or could have been raised in that action. The Texas state court decision, which Andrew never appealed, constituted such a final judgment. Since Andrew could have appealed or raised the points he now makes in that proceeding, res judicata acts as a bar in this suit.

Andrew does not challenge the 1970 decision but argues that *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which squarely held that military retirement benefits are not divisible in state court decrees as community property, negates the application of res judicata. Whatever the merits of that claim, it is foreclosed by this Court's decision (Erspan II) rehearing en banc denied, *Erspan v. Badgett*, 659 F.2d 26 (5th Cir. 1981).[2] Er-

---

1. State and Territorial statutes and judicial proceedings; full faith and credit

The Acts of legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certifi-

cate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

2. Two recent Texas state court opinions, *Powell v. Powell*, 620 S.W.2d 253 (Tex.Civ.App.— Waco, 1981), and *Jeffrey v. Kendrick*, 621 S.W.2d 207 (Tex.Civ.App.—Amarillo, 1981), deal with the application of *McCarty* to direct

*span II* holds that where a court has entered a final divorce decree apportioning military retirement benefits among husband and wife, *McCarty* does not overcome the res judicata effect of the prior decision. The Court relied on *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103, 108 (1981), where the Supreme Court stated, "the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case." Reasoning that the Supreme Court in *McCarty* would have explicitly so stated if it "intended to invalidate, or otherwise render unenforceable, prior valid and subsisting state court judgments," 659 F.2d at 28, the Court declined to do so on its own in the absence of a Texas state court decision granting *McCarty* preclusive effect even as to final decisions.

As we are absolutely bound by *Erspan II,* we likewise defer to an obvious if unexpressed implication of that decision. Although henceforth Texas divorce courts,

aware that they cannot divide military retirement benefits as community property, can fashion an equitable distribution of other community property so as to strike a rough balance, denial of res judicata effect where the property division is final would result in a windfall for the retired spouse.[3] In the good company of the late and much missed Judge Ainsworth of this Court,[4] we believe that *Erspan II* necessarily applies equally to future payments where, as here, a court some years before has entered a final judgment dividing marital property. The Travis County court's final, unappealed decision does not lose its binding effect as to the future payments by Andrew to Barbara.

AFFIRMED.

appeals in divorce proceedings. In both cases, no final decree had been entered prior to the announcement of the *McCarty* decision. Thus res judicata did not come into play. Those cases obviously provide no guidance in the current circumstances. In the absence of a definite holding by a Texas court on *McCarty*'s effect on the principle of res judicata, *Erspan II* governs.

**3.** *Erspan I* merely held that Mr. Badgett's discharge in bankruptcy did not affect the state court divorce decree and property settlement. Accordingly, this Court affirmed the trial court's holding that Mary Erspan was entitled to arrearages and to the future allotment of her share of Badgett's military retirement benefits. Between the date of that decision and the Court's opinion denying rehearing en banc, the Supreme Court intervened, announcing the *McCarty* decision. In *Erspan II*, the Court through Judge Johnson discussed in detail the *McCarty* holding and its possible effects on state court divorce decrees. The Court observed that application of *McCarty* to prior, final divorce decrees would upset settled property divisions and cause unfairness to persons like Mary Erspan—or Barbara Wilson. "By denying prior state court decrees the effect of equitably distributing the marital property between the former spouses, [any such approach]

would achieve prospective uniformity at the expense of individuals whose rights were determined in reliance upon a prior interpretation of the applicable law." 659 F.2d at 28, n.2. Postulating an even division of military retirement pay and all other property between the spouses, the Court pointed out that retroactive application of *McCarty* would leave the non-military spouse with only the 50% of the other property. Assuming for these purposes that the present value of the military retirement pay was equal to the value of the remaining community property, the non-retired spouse would end up with only 25% of the total property and no way in which to correct that unfairness. Seeking to avoid such inequitable treatment, the Court refused to allow *McCarty* to overcome the res judicata effect of the state court decision.

**4.** Judge Ainsworth, dissenting in *Erspan II*, expressed the belief that non-retired spouses were entitled to receive only the benefits payable before June 26, 1981, the date of the *McCarty* decision. Although with his death on December 22, 1981, we cannot know of his decision it seems obvious that he read *Erspan II*, as do we, as establishing the non-retired spouse's right to future payments as well.